SMITH, Judge.
Employer/carrier (E/C) seek review of the deputy commissioner’s order awarding claimant compensation benefits, raising issues of dual insurance coverage, interpretation of coverage provisions, and course and scope of employment. We affirm.
Claimant is a Michigan resident and president of McRae Fire Protection, Inc. In 1983, the company was engaged in the installation of a fire sprinkler system at the Walt Disney World EPCOT Center. As president of the company, claimant’s duties included negotiating contracts, overseeing projects, coordinating work, directing placement of sprinkler lines and heads, and supervising pipefitters.
Until a major portion of the project had been completed, claimant resided in Florida near the job site. He then commuted between Michigan and Florida. For approximately two weeks prior to the accident, claimant had been staying in a motel near the project site. The project was in its final stage of completion, and on the morning of the accident, claimant consulted with the two remaining pipefitters at the job site and then met with another subcontractor to discuss price adjustments. Having resolved a substantial portion of their business matters, they then went to lunch. On their way back to the job site, claimant and his business associate were involved in an automobile accident.
The E/C raise several issues on appeal.
First, E/C contend that there was dual coverage and that, therefore, benefits should have been awarded under the policy with the later effective date, citing section 440.42(2), Florida Statutes (1985). We disagree. There were two carriers involved in this claim. Chubb Insurance provided the employer with general workers’ compensation coverage, and CNA provided a wrap-up policy to cover the employer’s work at the EPCOT Center. The effective date of the CNA policy was October 1, 1982. The Chubb policy had an effective date of December 31, 1982, with a retroactive endorsement which was issued post-accident to exclude coverage provided by the CNA wrap-up policy. State guidelines for wrap-up insurance programs require that the writing company notify the contractors’ present carriers to exclude from existing policies the coverage to be provided by the wrap-up policy. Insurance Bulletin No. 599, October 16, 1973. When CNA issued the wrap-up policy, it knew that any dual coverage would be excluded eventually. The fact that the Chubb endorsement was issued post-accident has no bearing on CNA’s expectation in this regard.
Second,' E/C contend that competent, substantial evidence does not exist to support the deputy commissioner’s finding that claimant’s activities in Florida were covered under the CNA insurance policy. In support of this contention, E/C rely on the testimony of CNA underwriter Boel-zner who interpreted the following provision in the insurance policy to exclude employees such as the claimant:
Any provision in the policy to the contrary notwithstanding, such insurance as is afforded by the policy applies only as respects operations directly connected with work at or from the job site known as Walt Disney World EPCOT Center Project.
According to Boelzner, the purpose of the phrase “work at ... the job site” was to provide coverage for workers engaged in the hammering of nails and pouring of concrete on the construction site. Further, Boelzner opined, the purpose of the phrase “work ... from the job site” was to cover an on-site employee who had to go off the premises to obtain something which was directly connected with his work; and the phrase “operations directly connected with” was intended to confine coverage to acts essential to the actual construction of a building at the job site.
The deputy commissioner, however, rejected Boelzner’s restrictive interpretation of the policy and found that the policy applied to the claimant. We agree. Any ambiguities in the wording of the policy must be construed against the insurer drafting the policy. National Merchan *1108 dise Co., Inc. v. United Service Automobile Association, 400 So.2d 526 (Fla. 1st DCA 1981). The record reveals that claimant was actively involved in the day-to-day operations of the EPCOT project. During 1982, he leased a house in Florida and spent most of his time working on the EPCOT project. In 1983, claimant traveled between Michigan and Florida when necessary. At the time of the accident, he had been staying in a motel near the project for about two weeks. The project was in its final stages, and on the morning of the accident, claimant supervised the two remaining pipefitters at the job site and then began his discussions with another EPCOT subcontractor regarding price adjustments. These facts support the conclusion that the claimant was engaged in “operations directly connected with work” at the EPCOT project.
Third, E/C contend that the accident did not arise out of and in the course and scope of claimant’s employment. We disagree. As president of his company, it is evident that claimant’s duties included the negotiation of important contracts. On the morning of the accident, in addition to his supervisory functions, claimant was negotiating price adjustments with another subcontractor of the EPCOT project. When they reached a reasonable stopping place in their discussions, they went to lunch at a restaurant located on Disney property. On their way back to the job site, they were required to make a slight detour onto a public highway in order to gain access to the EPCOT construction site. The accident occurred while they were attempting to make a left turn off the public highway onto Disney property. Meetings which involve a combination of business and social activity are of a professional nature. Boyd v. Florida Mattress Factory, Inc., 128 So.2d 881 (Fla.1961); Skunk v. Gulf American Land Corp., 224 So.2d 269 (Fla.1969).
Also pertinent to this case is the “traveling employee’s” rule:
Employees whose work entails travel away from the employer’s premises are held ... to be within the course of their employment continuously during the trip, except when a distinct [departure] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.
1A Larson, Workmen’s Compensation Law, § 25.00 (1985); N. & L. Auto Parts Company v. Doman, 111 So.2d 270 (Fla. 1st DCA 1959); Leonard v. Dennis, 465 So.2d 538 (Fla. 2d DCA 1985); Gray v. Eastern Airlines, Inc., 475 So.2d 1288 (Fla. 1st DCA 1985). It is undisputed that claimant’s sole purpose for being in Florida was the installation of a fire sprinkler system at the EPCOT Center.
Finally, we find without merit the E/C’s challenge to the deputy commissioner's finding that claimant’s condition was causally related to the automobile accident. E/C contend that the medical testimony revealed preexisting cervical problems not aggravated by the automobile accident and that claimant’s current chronic condition was due to two independent intervening causes — claimant’s refusal to follow the doctor’s advice and a subsequent automobile accident. Any temporary setback resulting from the subsequent accident or other causes was de minimis in relation to all other evidence establishing a causal relation to the compensable accident.
The order appealed from is AFFIRMED.
JOANOS and WIGGINTON, JJ., concur.